858 F.2d 332
 129 L.R.R.M. (BNA) 2611, 57 USLW 2278,
110 Lab.Cas. P 10,756,
12 Fed.R.Serv.3d 582
 James HERRON; Robert Goodfellow; Donald Stover; John
Madden, Plaintiffs- Appellants,
v.
JUPITER TRANSPORTATION COMPANY, and/or Jupiter Investment:
d/b/a Kenosha Auto Transport, Defendant-Appellee.
 No. 87-3731.
 United States Court of Appeals,
Sixth Circuit.
 Submitted April 28, 1988.
Decided Oct. 3, 1988.
 
 Charles N. Ricketts, Springfield, Ohio, John R. Hammond, for plaintiffs-appellants.
 C. John Holmquist, Jr., Bloomfield Hills, Mich., Edward B. Mitchell, Smith & Schnacke, Cincinnati, Ohio, for defendant-appellee.
 Before KRUPANSKY and BOGGS, Circuit Judges; and BROWN, Senior Circuit Judge.
 KRUPANSKY, Circuit Judge.
 
 
 1
 This is an appeal from the district court's imposition of Fed.R.Civ.P. 11 sanctions against Charles N. Ricketts (Ricketts), legal counsel for the plaintiffs as a result of his conduct in pursuing an action on behalf of the plaintiffs charging breach of a collective bargaining agreement and breach of General Teamsters Local 654's duty of fair representation.
 
 
 2
 On February 3, 1984, plaintiffs initiated this action in the Common Pleas Court of Clark County, Ohio against Kenosha Auto Transportation Corporation (KAT), Gordon Birdsall (KAT's Vice-President of Labor), General Teamsters Local Union # 654, Donald Hager (Secretary-Treasurer of General Teamsters Local # 654) and General Teamsters Local # 414.[1] Because plaintiffs' action invoked Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, KAT properly removed this action to federal court pursuant to 28 U.S.C. Sec. 1441.
 
 
 3
 On February 22, 1984, KAT advised Ricketts by mail that the complaint was factually inaccurate and unsupported in law. The letter also notified Ricketts that KAT would seek attorney's fees for defending the specious action. Ricketts ignored the letter. Thereafter, KAT filed an answer to the complaint.
 
 
 4
 Ricketts was again advised by mail, on March 26, and on April 12, 1984, that the claim lacked factual and legal support which would become apparent through minimal discovery. Furthermore, KAT directed Ricketts to existing legal precedent to verify its assertions. Once more, Ricketts disregarded KAT's warnings.
 
 
 5
 KAT scheduled discovery depositions of the four plaintiffs for April 12, 1984, which were cancelled on April 11, 1984, at Ricketts's request. Three of the plaintiffs attended the rescheduled depositions on May 16, 1984. The fourth plaintiff, John Madden, failed to attend the rescheduled deposition, and as a result, his deposition was again postponed and subsequently completed on June 5, 1984.
 
 
 6
 After deposing the plaintiffs, KAT filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. On September 12, 1984, a status conference was conducted by the trial judge and counsel for all parties during which proceeding Ricketts advised the court that his clients were desirous of dismissing the action but were concerned that KAT would seek attorney's fees. KAT agreed to execute a release exonerating the plaintiffs from the payment of attorney's fees, and Ricketts was directed by the district court to prepare the release and dismissal documents within four weeks of the pretrial date of September 12, 1984. Ricketts ignored the court's order and failed to prepare the documents. KAT's counsel wrote to Ricketts on several occasions urging him to comply with the court's order to dismiss the action. Two months after the district court's October 10, 1984 deadline to file the dismissal documents, KAT's counsel drafted the documents and mailed them to Ricketts on December 13, 1984. Ricketts failed to execute the documents.
 
 
 7
 On April 8, 1985, the district court ordered Ricketts to file, within two weeks, a status report of the case. On May 6, 1985, Ricketts's failure to respond prompted the trial judge to dismiss the plaintiff's action with prejudice for want of prosecution pursuant to Fed.R.Civ.P. 41.
 
 
 8
 On June 6, 1985, under Fed.R.Civ.P. 11, KAT served Ricketts with a motion for attorney's fees and costs. Subsequent to Ricketts's failure to reply to KAT's motion, the district court, on November 13, 1985, notified Ricketts to respond to the motion within ten days. Ricketts ignored the district court's order, whereupon the district court, on December 20, 1985, concluded that plaintiffs' complaint was neither anchored in fact or law and, consequently, awarded attorney's fees to KAT under to Fed.R.Civ.P. 11. Pursuant to the district court's order, KAT filed a detailed itemization of fees and costs totaling $8,429.87 plus $605.35.
 
 
 9
 On January 17, 1986, Ricketts filed his first document since filing the complaint, a "motion for reconsideration" of the imposition of attorney fees arguing that (1) the complaint had been filed and pursued in good faith, and (2) as a result of "some personal problems," he had been unable to respond to the demands and inquiries of the opposing counsel and orders of the court. The district court denied the motion on August 11, 1986, stating that Ricketts's repeated egregious failures to adhere to the court's and counsel's requests foreclosed any reconsideration of the court's order imposing sanctions.
 
 
 10
 On October 15, 1986, Ricketts filed a "memorandum contra itemized fee statement" charging that the hourly rates submitted by KAT's counsel were not in accord with prevailing rates in the region and that attorney's fees, if justified, should be awarded only for the services rendered between September 12, 1984, to May 6, 1985.[2] The district court, on June 30, 1987, concluded that Ricketts's objections were without merit and awarded attorney's fees for the entire amount requested. Ricketts thereafter commenced this timely appeal.
 
 
 11
 On appeal, Ricketts argued that the district court was without jurisdiction to impose sanctions pursuant to Fed.R.Civ.P. 11, because the action had been initiated in state court and subsequently removed to federal court by KAT thereby mandating the application of Ohio R.Civ.P. 11 as the appropriate statute of procedure.
 
 
 12
 Initially, it should be noted that Ohio R.Civ.P. 11 was modeled after Fed.R.Civ.P. 11 (prior to 1983 amendment). Accordingly, under Ohio R.Civ.P. 11, an attorney was required to prove only a subjective good faith belief that the complaint was well supported in both fact and law to avoid the imposition of sanctions. See Stevens v. Kiraly, Nos. 1957/1983, slip op. at 10 (Ct.App., Nov. 15, 1986); Buller v. Respicare, Inc., No. 86AP-964, slip op. (Ct.App., May 5, 1987) (Whiteside, J. concurring). Consequently, Ricketts urged that since he had initiated this suit in good faith, the district court could not have awarded sanctions under either Fed.R.Civ.P. 11 or Ohio R.Civ.P. 11.
 
 
 13
 Fed.R.Civ.P. 11 (Rule 11)[3] was amended in 1983 to facilitate the imposition of sanctions against attorneys who disregard their professional responsibilities to the court. The purpose for sanctions was to deter the abuse of the legal process. As stated by the Advisory Committee, the function of the amended Rule was to "discourage dilatory or abusive tactics and help streamline the litigation process by lessening frivolous claims or defenses." Advisory Committee Note, Fed.R.Civ.P. 11. Prior to its amendment in 1983, Rule 11 required proof of subjective bad faith as a condition for imposing attorney's fees and costs against counsel, more specifically, "[f]or a willful violation of this rule." Fed.R.Civ.P. 11 (prior to 1983 amendment). See Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1379 (6th Cir.1987); Nemeroff v. Abelson, 620 F.2d 339, 350 (2d Cir.1980).
 
 
 14
 The amended rule "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." Advisory Committee Note, Fed.R.Civ.P. 11 (citations omitted). See also Albright v. Upjohn Co., 788 F.2d 1217, 1221 (6th Cir.1986). In addition, the new rule mandated the imposition of sanctions when warranted by specious arguments and/or abusive practices. INVST Financial Group v. Chem-Nuclear Systems, 815 F.2d 391, 401 (6th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); Westmoreland v. CBS, Inc., 770 F.2d 1168, 1174 (D.C.Cir.1985). "Under Rule 11, sanctions may be imposed if a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." Westmoreland, 770 F.2d at 1174. See also Smith v. Detroit Federation of Teachers, 829 F.2d at 1379.
 
 
 15
 Ricketts's argument that this court lacked authority to impose sanctions against him pursuant to Fed.R.Civ.P. 11 is without merit. When a complaint is filed in state court which is subsequently removed to federal court, Fed.R.Civ.P. 11 applies at the instant the federal jurisdiction is invoked over the proceedings. See Fed.R.Civ.P. 81(c) (Federal Rules of Civil Procedure apply to all proceedings after the case is removed from state court). See generally Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).[4] In a removal case, the reasonable inquiry required under Rule 11 is not a one-time obligation. Once removed, the plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11. Failure to do so permits the district court, within its discretion, to impose sanctions against the offending litigant or attorney when a reasonable inquiry would have disclosed that the complaint was either lacking in factual support or unwarranted by existing law. See Foval v. First Nat. Bank of Commerce, 841 F.2d 126, 130 (5th Cir.1988) ("Rule 11 should not countenance sanctions for pleadings filed in state court in a case later removed to federal court unless, their deficiency having been promptly brought to the attention of the pleader after removal, he (or she) refuses to modify them to conform to Rule 11."). To hold otherwise would defeat the letter and spirit of amended Rule 11.
 
 
 16
 Rule 11 was promulgated to deter the flow of frivolous claims into federal court. Advisory Committee Note, Fed.R.Civ.P. 11; Westmoreland, 770 F.2d at 1174. Permitting plaintiffs to continue to litigate a frivolous claim in federal court after removal from state court, when a reasonably diligent inquiry at that time would have disclosed the complaint to be without support either in fact or law, would undercut the full force intended by Rule 11. It would afford plaintiffs an avenue for invoking federal jurisdiction by initiating frivolous suits in state court where the plaintiffs knew or should have known that the case would be removed to federal court thereby eviscerating the intent and purpose of the rule.
 
 
 17
 This position is consistent with similar Rule 11 cases that have concluded that an attorney and the litigant have a continuing obligation to review and reevaluate their pleadings, motions and other papers and upon discovery that such papers were without merit, to immediately dismiss the action at the risk of inviting the imposition of Rule 11 sanctions. See Yonkers v. Otis Elevator, 844 F.2d 42, 49 (2d Cir.1988) (failure to dismiss a claim once discovery disclosed the claims were specious warranted sanctions for attorney's fees incurred by defendant to pursue summary dismissal of the action); Flip Side Productions, Inc. v. Jam Productions Ltd., 843 F.2d 1024, 1036 (7th Cir.1988) (upheld sanctions, under Rule 11's frivolousness clause, because once discovery was completed, plaintiffs should have known that the facts and the law clearly established that the complaint was baseless).[5]
 
 
 18
 This Circuit is in accord with the foregoing precedent. In Albright, having determined that the complaint was filed without adequate inquiry into its factual basis, the court stated that there was a Rule 11 violation because "Albright asserted her claim for liability against Upjohn with the knowledge that she had no factual basis for the claim, and continued to assert the claim long after it would have been reasonable to have dismissed it." Albright, 788 F.2d at 1221 n. 7. More recently, in Michaels Bldg. Co. v. Ameritrust Company, 848 F.2d 674, 680-81 (6th Cir.1988), this court stated that "after discovery has been launched, if plaintiffs are still unable to plead a sufficient factual basis for the allegations made against defendants, the spectre of Rule 11 sanctions should guide the actions of plaintiffs' counsel." Id. at 681. See also Advo System, Inc. v. Walters, 110 F.R.D. 426, 430 (E.D.Mich.1986) ("This duty [under Rule 11] is not limited merely to the initial filing of the case, but rather is a continuing obligation on attorneys to refrain from pursuing meritless or frivolous claims at any stage of the proceedings."). Consequently, upon removal of a complaint from state court to federal court, the litigant and the litigant's attorney are under a continuing obligation to conduct a reasonable inquiry into the pleaded facts and law of the action to satisfy the requirements of Fed.R.Civ.P. 11 or otherwise risk sanctions.[6]
 
 
 19
 Existing precedent within this circuit has enunciated the standard of appellate review of a district court order imposing Rule 11 sanctions to be an abuse of discretion predicated upon the presumption that the district court had, as a result of the proceedings, acquired an intimate knowledge of the facts and the credibility of the litigants and was, therefore, more qualified to realistically assess the circumstances necessary to properly dispose of the motion. Mihalik v. Cantwell, 851 F.2d 790 (6th Cir.1988); Century Products, Inc. v. Sutter, 837 F.2d 247, 253 (6th Cir.1988).
 
 
 20
 Shortly after Ricketts filed the instant complaint, all four defendants advised him that the pleading was not anchored in fact nor warranted by existing law. To prevail in this litigation the plaintiffs were required to provide proof to support their charges that the duty of fair representation under the collective bargaining agreement or the arbitrator's decision was breached as a result of fraud, misconduct or partiality. See United Paperworks International Union, AFL-CIO v. Misco, Inc., --- U.S. ----, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The depositions of all four plaintiffs conceded that individually or collectively, they knew of no facts to support their claim except that "it [the dovetailing] seemed unfair." Furthermore, they could not identify any individual or act which would have supported their claim that KAT willfully or negligently caused the National Automobile Transportation Joint Arbitration Committee to issue its "dovetailing" decision. Apart from the information supplied by the defendants admonishing that the action was without merit, minimal inquiry into the facts of this case subsequent to removal would have disclosed that the complaint was without factual or legal support.
 
 
 21
 Moreover, a cursory inquiry would have disclosed that a similar action charging the identical facts and infringements filed by plaintiffs' co-workers, against the same defendants, had been denied just prior to Ricketts's action. See Steinmetz, slip op. at 6. Consequently, the district court did not abuse its discretion by imposing sanctions on Ricketts under Fed.R.Civ.P. 11.
 
 
 22
 Additionally, Ricketts contended that the amount of attorney's fees awarded was an abuse of discretion. Ricketts urged that a proper award should have computed fees incurred only between September 14, 1984, and the dismissal of the lawsuit. This represented the time period between the pretrial conference, where Ricketts agreed to dismiss the action, and the final disposition of the case in district court. Ricketts argued that prior to the pretrial conference, he had conscientiously pursued the claim.
 
 
 23
 Ricketts's contention is without merit. "The selection of the type of sanction to be imposed lies ... within the district court's sound exercise of discretion." Westmoreland, 770 F.2d at 1175; see also Albright, 788 F.2d at 1222. The records revealed that the district court and KAT's counsel had accorded Ricketts every opportunity to avoid sanctions which he ignored. In fact, even after KAT's counsel provided Ricketts with a proposed draft of the court ordered entry, he failed to execute the court-ordered documents. Furthermore, the district judge delayed ruling on KAT's motion for attorney's fees for more than five months while waiting for Ricketts's response. The district judge personally notified Ricketts to reply, which he failed to heed. Consequently, since Ricketts's complaint was neither anchored in fact nor based upon existing law, and because he repeatedly ignored the court's and counsels' requests to comply with the court's orders, the district court was well within its discretion in tailoring the sanctions imposed on Ricketts.
 
 
 24
 Accordingly, the judgment of the district court imposing sanctions on Ricketts under Fed.R.Civ.P. 11 in the amount of $9,035.22 is AFFIRMED.
 
 
 
 [1]
 KAT closed its Fort Wayne plant in 1983 for economic reasons and its employees were merged into its Springfield, Ohio plant. Certain Fort Wayne employees were permitted to "dovetail" into the Springfield plant employment roster by entering the seniority list of the Springfield roster at their existing seniority level at Fort Wayne. The arrangement was undertaken pursuant to the collective bargaining agreement whereby the National Automobile Transportation Joint Arbitration Committee (Committee) resolved the issue. Subsequently, three employees of the Springfield plant initiated an identical action to the one presently pursued by the plaintiffs herein in the Court of Common Pleas, Clark County, Ohio, which was later removed to federal court. The court affirmed the Committee's disposition in Steinmetz v. Kenosha Auto Transport, No. C-3-83-765 (S.D.Ohio, Feb. 1, 1984), aff'd, 779 F.2d 52 (6th Cir.1985) (unpublished per curiam)
 
 
 [2]
 This represented the time period from the status conference to the date of dismissal
 
 
 [3]
 Federal Rule of Civil Procedure 11, as amended, provides:
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 Fed.R.Civ.P. 11.
 
 
 [4]
 Recently, the Fourth Circuit has held that the Federal Rules of Civil Procedure should apply to the entire proceedings of a federal claim initiated in state court and subsequently removed to federal court. Cannon v. Kroger Co., 832 F.2d 303 (4th Cir.1987). In Cannon, plaintiff initiated a "hybrid" Sec. 301/fair representation claim in state court. Under North Carolina R.Civ.P. 3, a plaintiff was permitted to postpone filing a complaint within the applicable statute of limitations by first making an application to the court outlining the nature and purpose of the claim, and requesting permission from the court to file the complaint within 20 days. In Cannon, plaintiff requested and received an extension. She properly filed a complaint at the end of the twenty day period. A similar extension was not available under the Federal Rules of Civil Procedure. Upon removal, the federal district court dismissed the claim concluding that the complaint was not filed within the controlling federal statute of limitations. The Fourth Circuit stated that the Federal Rules of Civil Procedure controlled the filing of the action even though it was commenced in state court citing uniformity as justification for its action. Id. at 305-306
 
 
 [5]
 But see Thomas v. Capital Security Services, 836 F.2d 866 (5th Cir.1988) (en banc); Gaiardo v. Ethyl Corporation, 835 F.2d 479 (3d Cir.1987); Oliveri v. Thompson, 803 F.2d 1265 (2nd Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)
 
 
 [6]
 There are a number of circuits which have construed Fed.R.Civ.P. 11 not to apply to complaints filed in state court which are subsequently removed to federal court. Hurd v. Ralphs Grocery Co., 824 F.2d 806 (9th Cir.1987); Stiefvater Real Estate, Inc. v. Hinsdale, 812 F.2d 805 (2d Cir.1987); Kirby v. Allegheny Beverage Corp., 811 F.2d 253 (4th Cir.1987), Brown v. Capitol Air, Inc., 797 F.2d 106 (2d Cir.1986); Peffley v. Durakool, Inc., 669 F.Supp. 1453 (N.D.Ind.1987). This court is of the opinion that these courts have interpreted the language and spirit of Fed.R.Civ.P. 11 too narrowly